# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

|  |  |  |
|---|---|---|
| **BRIAN SCOTT LANHAM and** | ] | |
| **CYNTHIA LANHAM,** | ] | |
| | ] | |
| **Plaintiffs,** | ] | |
| | ] | **Case No.: 4:13-CV-1358-VEH** |
| **v.** | ] | |
| | ] | |
| **JOHN CAREY GNEWUCH and** | ] | |
| **PRIME, INC.,** | ] | |
| | ] | |
| **Defendants.** | ] | |

## MEMORANDUM OPINION

## I.    INTRODUCTION AND PROCEDURAL HISTORY

Plaintiffs Brian Scott Lanham ("Mr. Lanham") and Cynthia Lanham ("Ms. Lanham") initiated this personal injury lawsuit against Defendants John Carey Gnewuch ("Mr. Gnewuch") and Prime, Inc. ("Prime") on July 22, 2013. (Doc. 1). In this case, Mr. Lanham alleges that he was injured when he fell from the back of a tractor trailer owned by Prime and driven by Mr. Gnewuch when Mr. Gnewuch drove the trailer away from a loading dock while Mr. Lanham was inside the trailer unloading a delivery. (Doc. 1 ¶¶ 10, 12).

Pending before the court is Defendants' Motion for Summary Judgment (Doc. 32) (the "Motion") filed on December 1, 2014. On December 22, 2014, the Lanhams filed their response in opposition to the Motion. (Doc. 42). Prime and Mr. Gnewuch

followed with their reply (Doc. 43) on January 5, 2015, and now the Motion is under

submission. For the reasons explained below, the Motion is **GRANTED IN PART**

and otherwise is **DENIED**.

## II.     FACTUAL BACKGROUND[1]

### A.     Mr. Gnewuch's Employment with Prime Inc.

Mr. Gnewuch became a professional truck driver in 2010 after attending a three

week truck driving course at Houston Community College. (Doc. 33-1 at 5, 9). He

began his employment with Prime in December 2012, after working as a truck driver

for two years, AF No. 24.[2] Upon joining Prime, Mr. Gnewuch participated in a four

---

[1]  Keeping in mind that when deciding a motion for summary judgment the court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion, the court provides the following factual background. *See Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007) (observing that, in connection with summary judgment, a court must review all facts and inferences in a light most favorable to the non-moving party). This statement does not represent actual findings of fact. *See In re Celotex Corp.*, 487 F.3d 1320, 1328 (11th Cir. 2007). Instead, the court has provided this statement simply to place the court's legal analysis in the context of this particular case or controversy.

[2]  The designation "AF" stands for admitted fact and indicates a fact offered by one of the parties that the opposing party has admitted in his written submissions on summary judgment, in his deposition testimony, or by virtue of any other evidence offered in support of his case. Further, pursuant to appendix II of the court's uniform initial order (Doc. 3), entered on July 23, 2013, "*[a]ll additional material facts set forth in the statement required of the opposing party will be deemed to be admitted for summary judgment purposes unless controverted by the statement of the movant*." (*Id.* at 19) (emphasis in original). The movant may respond to the non-moving party's additional facts, in separately numbered paragraphs, by stating that the fact is disputed and referencing those portions of the evidentiary record upon which the disputation is based. (*Id.*) In their reply (Doc. 43), Defendants reference the Lanhams' additional undisputed facts. (*Id.* at 4-5). However, except for facts related to the policy concerning the trailer lock, they do not dispute the additional undisputed facts offered by the Lanhams. (*Id.*) The court's numbering of admitted facts (*e.g.*, AF No. 1) corresponds to the numbering of Defendants' statement of undisputed facts as set forth in Doc. 32

or five day training program that consisted of classroom and simulator training, but did not include any actual behind-the-wheel training. (Doc. 33-1 at 18-19).

In January 2013, Mr. Gnewuch was involved in two separate preventable accidents. On January 4, 2013, he was backing or pulling through a parking spot and scraped the trailer next to him. (Doc. 33-4 at 9). On January 20, 2013, he backed into the passenger front of the other vehicle. (Doc. 33-4 at 10). There is no evidence that any adverse employment action was taken against Mr. Gnewuch as a result of these incidents. (Doc. 33-4 at 9-10).

### B.    The Accident

The accident that is the basis of this lawsuit occurred on March 22, 2013, at the Wal-Mart in Oneonta, Alabama. The Oneonta Wal-Mart has two loading bays, one at each back corner of the building. AF No. 9; (Doc. 33-12). The loading bay where the accident occurred contained four lanes, such that four trailers could be parked for loading or unloading at any given time. (Doc. 33-12). There are two pedestrian doors adjacent to the loading area. (*Id.*) The DSD Grocery door is located on the side of the building near the end of the loading bay (this door is labeled "DSD GRO" on the exhibit) and the DSD door is located on the back of the building near the front of the loading bay (this door is labeled "D" on the exhibit). (*Id.*) (Doc. 33-7 at 33).

---

and responded to and expanded upon by the Lanhams in Doc. 42.

The day of the accident, as part of his employment with Prime, Mr. Gnewuch was making deliveries from the Wal-Mart distribution center in Tennessee to several Wal-Mart stores in Alabama. AF No. 4. After making his first delivery, he drove to the Oneonta Wal-Mart to make his next delivery. AF No. 3. Mr. Gnewuch did not place a padlock on the trailer after making his first delivery. (Doc. 33-3 at 3). Upon his arrival at the Onenota Wal-Mart, Mr. Gnewuch drove to a loading bay at the rear of the store. AF No. 5. He backed his trailer into a loading bay, exited the vehicle, and walked to a pedestrian door. AF No. 6.

The door Mr. Gnewuch went to is the DSD Grocery door. (Doc. 33-7 at 25). He rang the doorbell and waited for "several minutes" before Terry Tucker opened the door. (Doc. 33-3 at 6); (Doc. 33-7 at 25). Ms. Tucker asked him if she could help him and he responded that he was there to drop off a delivery. (Doc. 33-7 at 26). Ms. Tucker told him "you're at the wrong door." (*Id.*) He asked which door did he need to go to and Ms. Tucker walked out of the door into the parking lot and pointed in the direction of the DSD door, which is located on the other side of that loading bay. (*Id.* at 26-27, 30-33). She also explained to him that he needed to walk past the fence and then he would see the door. (*Id.* at 32-33).

While Mr. Gnewuch was at the pedestrian door, Wal-Mart personnel, including Mr. Lanham, began unloading the unlocked trailer. AF Nos. 1-2, 12. Specifically,

Wal-Mart employee Chris Thompson arrived at the unloading dock where Mr. Gnewuch's trailer was parked. He testified that the truck appeared ready to be unloaded, so he began the unloading process. (Doc. 33-9 at 24). He further testified that if there is not a padlock on a trailer, "it's [his] job to break the seal and go in and unload the truck." (33-10 at 23).

After his interaction with Ms. Tucker, Mr. Gnewuch returned to his tractor trailer and began to pull away from the loading dock with the intent to move his trailer to the other loading bay at the Oneonta Wal-Mart. AF Nos. 8-9. He did not check to see if anyone was unloading the truck and did not issue any type of warning before moving. (Doc. 33-3 at 7; Doc. 33-9 at 41). As Mr. Gnewuch pulled his vehicle away from the loading bay , Mr. Lanham fell from the trailer and was injured as a result. AF No. 13.

### C.    Wal-Mart and Prime Inc.'s Policies

The parties point to several policies as being relevant to this case. First, both Prime and Wal-Mart required the trailer to remain padlocked. (Doc. 41-6 at 5; Doc. 41-7 at 5). The purpose of the policy was load security. (Doc. 41-6). Mr. Gnewuch was aware he was supposed to keep his trailer locked. However, he did not place a padlock on the trailer after he made his first delivery on the morning of the accident. (Doc. 33-3 at 3). It was Mr. Gnewuch's practice not to replace the padlock on the trailer after making the first delivery of the day. (Doc. 33-2 at 16).

5

Second, pursuant to Wal-Mart's delivery guidelines for third party drivers, when a driver is making a delivery, he is to "[r]emove the padlock, open the trailer door, . . . and oversee the unloading of the store's product." (Doc. 33-13 at 5).[3] As the truck is unloaded, the driver is to verify that the appropriate pallets are taken off. (*Id.*) Neither Terry Tucker nor Chris Thompson was aware that it was Wal-Mart's policy that third party truck drivers be present during delivery. (Doc. 33-8 at 12; Doc. 33-9 at 36). Mr. Gnewuch understood that he was to be present at the back door of the trailer to oversee the unloading process. AF No. 14. That being said, a Wal-Mart employee noted that Prime truck drivers were not always present during the delivery and unloading process. (Doc. 33-10 at 36).

## D.     Procedural History

On July 22, 2013, Mr. and Mrs. Lanham filed suit against Mr. Gnewuch and Prime. (Doc. 1). Their Complaint contains four causes of action:[4] (1) negligence, recklessness, and/or wantonness by John Gnewuch; (2) respondeat superior; (3)

---

[3] Defendants cite to a different section of this document in their statement of facts. (Doc. 32 at ¶ 15). However, that section relates to the delivery/unloading process of Dry Loads and HVDC. (Doc. 33-13 at 2). The section cited by the undersigned relates to the delivery/unloading process of perishable goods. The difference in language is immaterial.

[4] The Complaint contains a "Fifth Cause of Action" that reads, in whole: "Plaintiff avers that all of his injuries and damages were proximately caused by the combined and concurring negligence of each and all of the Defendants." (Doc. 1 at ¶ 18). This is not a distinct cause of action. This point was addressed by Defendants in their Motion for Summary Judgment (Doc. 32 at 29) and not was disputed by Plaintiffs' in their Response (Doc. 42). Accordingly, such "claim" is due to be dismissed.

negligent, reckless, and wanton actions on the part of Prime in its hiring, training, retention, and supervision of Mr. Gnewuch and when it entrusted Mr. Gnewuch with the tractor trailer; and (4) loss of consortium claim. In short, the Complaint alleges: that Mr. Gnewuch's negligence and/or wantonness caused Mr. Lanham's injuries; that both Mr. Gnewuch and Prime, as employer of Mr. Gnewuch, are liable for those injuries; and that Prime was independently negligent and/or wanton in its hiring, training, retention, and supervision of Mr. Gnewuch and in entrusting the tractor trailer to Mr. Gnewuch. Finally, the Complaint alleges that the above negligence and wantonness caused Cynthia Lanham to lose the services, companionship, and consortium of her husband.

## III.   SUMMARY JUDGMENT STANDARD

Summary judgment is proper only when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R . Civ. P. 56(a). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510,  91 L. Ed. 2d 202 (1986). "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the

nonmoving party to 'come forward with specific facts showing that there is a genuine issue for trial.'" *International Stamp Art, Inc. v. U.S. Postal Service*, 456 F.3d 1270, 1274 (11th Cir. 2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986)).

## IV.   ANALYSIS

### A.   Negligence and Wantonness Claims Based on Mr. Gnewuch's Conduct

Counts One and Two Complaint allege that Mr. Gnewuch's negligence and wantonness caused the accident in this case, that Mr. Gnewuch is liable individually, and that Prime is liable as his employer on the basis of respondeat superior. Prime concedes for purposes of summary judgment that Mr. Gnewuch was acting an agent for Prime. (Doc. 32 at 23-24). Thus, Prime's liability turns on whether Mr. Gnewuch was either negligent or wanton. Because Mr. Gnewuch's and Prime's liability both turn on whether Mr. Gnewuch acted negligently and/or wantonly, the court will address these claims together.

#### 1.   Negligence

"To establish negligence, the plaintiff must prove: (1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury." *Smoyer v. Birmingham Area Chamber of Commerce*, 517 So. 2d 585, 587 (Ala. 1987). Defendants argue that Plaintiffs cannot prove that Mr. Gnewuch breached any duty

to Mr. Lanham and they further argue that any alleged negligent acts by Mr. Gnewuch were not the proximate cause of Mr. Lanham's injuries. (Doc. 32 at 15-16).

Defendants correctly note that Mr. Gnewuch had "a duty to operate his vehicle and perform his duties in a reasonably safe manner." (Doc. 32 at 16). They argue he did this when he parked in the correct loading bay and that it was reasonable for him to move his truck when he was told he was at the wrong door. This argument misses the point. The issue in this case is whether, upon hearing he was "at the wrong door," it was reasonable for Mr. Gnewuch to move his truck *without ensuring that it was safe to do so*. The facts show, that upon his arrival at the Oneonta Wal-Mart, Mr. Gnewuch backed his trailer, which he knew was unlocked, to a loading bay and went to a pedestrian door to announce his arrival. He had to wait for some time before Terry Tucker answered the door. In light of the facts that Mr. Gnewuch left his trailer parked at a dock that was used for unloading trailers, knew his trailer was not secured, and that several minutes had passed since he arrived at the Wal-Mart, whether it was reasonable for him to move his trailer without ensuring that no one was actively unloading it is a question for the jury. *See Gulledge v. Brown & Root, Inc.*, 598 So. 2d 1325, 1330 (Ala. 1992) ("[The Alabama Supreme Court has often noted that questions of negligence incorporate factual evaluations that are almost always within the province of the jury."). Further, it is clear that a reasonable jury could find that Mr.

Gnewuch's failure to ensure no one was unloading the truck before he moved it proximately caused Mr. Lanham's injuries.[5] Accordingly, Defendants' motion for summary judgment as to this claim is due to be denied.

### 2.      Wantonness

The Supreme Court of Alabama explained wantonness in *Scott v. Villegas*, 723 So. 2d 642 (Ala. 1998):

> In *Alfa Mutual Ins. Co. v. Roush*, 723 So. 2d 1250 (Ala. 1998), this Court clarified the definition of "wantonness":
>
> > "'Wantonness' is statutorily defined as '[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others.' Ala. Code 1975, § 6-11-20(b)(3). 'Wantonness' has been defined by this Court as the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result. *Bozeman v. Central Bank of the South*, 646 So. 2d 601 (Ala. 1994)."
>
> Wantonness requires more than a mere showing of some form of inadvertence on the part of the driver; it requires a showing of some degree of conscious culpability. *See Ex parte Anderson*, 682 So. 2d 467, 469 (Ala. 1996); *see, also, George v. Champion Ins. Co.*, 591 So. 2d 852 (Ala. 1991). "The actor's knowledge may be proved by showing

---

[5] Defendants argue that "the subsequent actions of Wal-Mart employee, as well as Wal-Mart's failure to enforce its own policies constitute efficient, intervening causes of the accident."(Doc. 43 at 8). Specifically, Defendants argue that the actions of Ms. Tucker in informing Mr. Gnewuch he was at the wrong door and Wal-Mart's failure to inform employees about its policy that truck drivers must be present for unloading were subsequent or intervening causes. This argument overlooks the fact that these actions occurred *prior to* Mr. Gnewuch's failure to check to make sure it was safe to move his truck, and thus are not subsequent or intervening actions.

circumstances from which the fact of knowledge is a reasonable inference; it need not be proved by direct evidence." *Hamme v. CSX Transp., Inc.*, 621 So. 2d 281, 283 (Ala. 1993).

*Scott*, 723 So. 2d at 642 (emphasis added). In other words, wantonness involves an "act done or omitted with knowledge of the probable consequence, and with reckless disregard of such consequence." *Ex parte Capstone Bldg. Corp.*, 96 So. 3d 77, 85 (Ala. 2012). The Alabama Supreme Court has emphasized the following:

> "wantonness" does not require any intent to injure another:
>
> > "The concept is, of course, universal that to constitute wantonness it is not essential that the defendant should have entertained a specific design or intent to injure the plaintiff. A wilful or intentional act may not necessarily be involved in wantonness. It may consist of an inadvertent failure to act by a person with knowledge that someone is probably imperiled and the act or failure to act is in reckless disregard of the consequences. *Atlantic Coast Line R. Co. v. Brackin*, 248 Ala. 459, 461, 28 So. 2d 193."

*Joseph v. Staggs*, 519 So. 2d 952, 954 (Ala. 1988) (quoting *McNickle v. Stripling,* 67 So. 2d 832 at 833 (1953)).

In this case, Mr. Gnewuch knew the purpose of his trip to the Oneonta Wal-Mart was to get his trailer unloaded. He knew that his employer's policies required him to keep the trailer locked except when it was being unloaded. He knew his trailer was unlocked. He backed up his unlocked trailer flush to the unloading dock for it to be unloaded and walked to a pedestrian door where he remained for several minutes

11

before returning to move the trailer. There is no evidence indicating that Mr. Gnewuch took any steps to ensure that no one was unloading the trailer before he pulled away. He also did not issue any warning, such as by knocking on the trailer or blowing his horn, before driving off. The question for the undersigned is whether, in light of these facts, a reasonable jury could find that by moving the trailer without ensuring it was safe to do so, injury would likely or probably result.[6] To be clear, "[i]t is not required . . . that the actor know that a person is within the zone made dangerous by his conduct; it is enough that he knows a strong possibility exists that others may rightfully come within the zone." *Staggs*, 519 So. 2d at 954. Thus, the question is whether Mr. Gnewuch knew that a strong possibility existed that someone would be unloading the trailer and would be injured when he drove away. The court finds that a reasonable juror could answer that question in the affirmative.

This decision is in line with a similar decision by the Alabama Supreme Court, *Valley Bldg. & Supply, Inc. v. Lombus*, 590 So. 2d 142 (Ala. 1991). In *Valley*, a truck driver delivered a load to Valley at its business location on U.S. Highway 280 in Childersburg, Alabama. *Id.* at 143. "After unloading the roofing material, the driver

---

[6] In their motion for summary judgment, Defendants argue that Mr. Lanham must prove his case by clear and convincing evidence. (Doc. 32 at 16). However, to survive summary judgment, Plaintiff must only show substantial evidence of wantonness. *Griffin v. Modular Transp. Co.*, No. 2:12-CV-2378-WMA, 2014 WL 896627, at *2 (N.D. Ala. Mar. 6, 2014) (citing *Phillips ex rel. Phillips v. United Servs. Auto. Ass'n*, 988 So. 2d 464, 467 (Ala. 2008)).

asked Valley employees how he was to exit Valley's premises. He was told that Valley employees would stop the traffic on U.S. Highway 280, and that he would then be able to back into the highway." *Id.* An employee of Valley then enlisted the aid of a customer to help. *Id.* Neither was equipped with any type of warning devices in order to stop traffic. *Id.* The evidence showed that the customer was to stop traffic and then let the employee know when it was safe for the driver to back his truck onto the highway. *Id.* The employee then conveyed this information to the driver. *Id.* The plan did not work, as a motorist who was traveling down U.S. Highway 280 was killed when he collided with the tractor trailer. *Id.*

The Alabama Supreme Court affirmed the jury's finding of wantonness because the jury could have concluded that the employee had knowledge that U.S. Highway 280 was a well-traveled highway, that it was rush hour, and that he had failed to provide the customer with any warning devices to assist him in stopping traffic. Thus, the employee knew that injury would likely or probably result. *Id.* at 144. If anything, the facts of the instant case are more egregious than those presented in *Valley*, as Mr. Gnewuch did not make <u>any</u> attempt in this case to ensure it was safe to move his vehicle before doing so.

Defendants argue that *Valley* is distinguishable from this case because Mr. Gnewuch did not violate a rule or undertake an illegal maneuver when he pulled his

trailer away from the loading dock. (Doc. 43 at 6). However, a close reading of *Valley* does not indicate that there was a rule violation or illegal maneuver at issue in that case. *Valley*, 590 So. 2d 142. Further, Mr. Lanham has noted that Mr. Gnewuch's actions allegedly violated Ala. Code § 32-5A-132, which provides that "no person shall start a vehicle which is stopped, standing, or parked unless and until such movement can be made with reasonable safety." Accordingly, for both these alternative reasons, Defendants' argument that *Valley* is distinguishable is not well taken.

To the extent Defendants argue Mr. Gnewuch did not have reason to believe the trailer was being unloaded based on his conversation with Terry Tucker and Wal-Mart's policy that third-party truck drivers be present during delivery, it is the role of the jury to weigh those facts with the others to determine whether Mr. Gnewuch knew that injury would likely or probably result from moving his trailer without ensuring that it was safe to do so. At this juncture, the undersigned simply finds that Mr. Lanham has presented sufficient evidence of wantonness such that the claim should be decided by the jury. As such, Defendants' motion for summary judgment as to the wantonness claim is due to be denied.

## B.     Mr. Lanham's Claims against Prime for its Negligence

In addition to alleging that Prime is liable for Mr. Gnewuch's negligence and/or

14

wantonness, Mr. Lanham Complaint also alleges that Prime was negligent in its own right. (Doc. 1 at ¶ 16). The first claim against Prime is for negligent and/or wanton hiring, training, supervision, and retention of Mr. Gnewuch. (*Id.*) The second is for negligent entrustment. (*Id.*)

### 1.    Negligent and/or Wanton Hiring, Training, Supervision, and Retention

The Alabama Supreme Court has described the crux of this cause of action as follows:[7]

> In the master and servant relationship, the master is held responsible for his servant's incompetency when notice or knowledge, either actual or presumed, of such unfitness has been brought to him. Liability depends upon its being established by affirmative proof that such incompetency was actually known by the master or that, had he exercised due and proper diligence, he would have learned that which would charge him in the law with such knowledge. It is incumbent on the party charging negligence to show it by proper evidence. This may be done by showing specific acts of incompetency and bringing them home to the knowledge of the master, or by showing them to be of such nature, character, and frequency that the master, in the exercise of due care, must have had them brought to his notice. While such specific acts of alleged incompetency cannot be shown to prove that the servant was negligent in doing or omitting to do the act complained of, it is proper, when repeated acts of carelessness and incompetency of a certain character are shown on the part of the servant to leave it to the jury whether they

---

[7] Mr. Lanham cites to *Voyager Ins. Companies v. Whitson*, 867 So. 2d 1065 (Ala. 2003) and *Ledbetter v. United American Insurance Co.*, 624 So. 2d 1371, 1373 (Ala. 1993) for the proposition that Alabama courts have looked to the Restatement (Second) of Agency for guidance in determining whether an employer is liable for its own negligence, outside of any vicarious liability theory. While these cases do mention the Restatement (Second) of Agency, they do not adopt it as the law of Alabama.

would have come to his knowledge, had he exercised ordinary care.

*Armstrong Business Services, Inc. v. AmSouth Bank*, 817 So. 2d 665, 682 (Ala. 2001);

*Big B, Inc. v. Cottingham*, 634 So. 2d 999, 1003 (Ala. 1993) (abrogated on other

grounds).

In this case, Mr. Lanham alleges that "Prime, Inc. was negligent and/or reckless

. . . as [it] failed to ensure that proper regulations were in place to adequately instruct

and train [its] employees on the delivery/unloading process at the Oneonta [Wal-

Mart]." (Doc. 40 at 21). Presumably, Mr. Lanham is arguing that Mr. Gnewuch was

incompetent because he did not have knowledge of the specific delivery/unloading

process at the Oneonta Wal-Mart and that Prime knew about this incompetence

because it had failed to provide the aforementioned training.

 In this context,

> [I]ncompetency is connected conjunctively with carelessness, indifference, heedlessness and recklessness. . . . 'Incompetency, as related to the law of negligence, connotes "*want of ability suitable to the task, either as regards natural qualities or experience, or deficiency of disposition to use one's abilities and experience properly. . . .*[I]t may include want of qualification generally, such as habitual carelessness, disposition, and temperament.

*Joyner v. B & P Pest Control, Inc.*, 853 So. 2d 991, 999 (Ala. Civ. App. 2002)

(quoting *McGowin v. Howard*, 36 So. 2d 323, 325 (1948)). The lack of specific

training related to the delivery procedures at the Oneonta Wal-mart does not rise to

the level that it rendered Mr. Gnewuch incompetent such that he was unsuitable for the task of delivering goods to the Oneonta Wal-Mart.

Further, there is no causal relationship between Mr. Gnewuch's lack of location specific-training and his alleged negligence. The act of negligence in this case occurred when Mr. Gnewuch failed to ensure it was safe to move his trailer before pulling away from the loading bay. To the extent Mr. Lanham suggests that this training would have prevented the accident because Mr. Gnewuch would have initially walked to the correct pedestrian door, this argument is a nonstarter. Mr. Gnewuch did not breach any duty when he went to the DSD Grocery door. In other words, going to the wrong door was not the act of negligence that caused the accident. Thus, properly training Mr. Gnewuch on the proper delivery procedures for the Oneonta Wal-Mart, for example, which pedestrian door to use, would not have prevented the alleged negligence that caused the accident that occurred in this case. Accordingly, Prime is entitled to summary judgment on this claim.

### 2.   Negligent Entrustment

The Alabama Supreme Court "has adopted *Restatement (Second) of Torts* § 390 (1965) as the law of this State in cases involving negligent entrustment." *Edwards v. Valentine*, 926 So. 2d 315, 319-320 (Ala. 2005) (citing *Keller v. Kiedinger,* 389 So. 2d 129, 132 (Ala. 1980)). According to § 390, as quoted in

*Edwards*,

> [o]ne who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

926 So. 2d at 320.

To succeed on his claim for negligent entrustment, Mr. Lanham must prove the following elements "(1) an entrustment; (2) to an incompetent; (3) with knowledge that he is incompetent; (4) proximate cause; and (5) damages." *Edwards v. Valentine*, 926 So. 2d 315, 320 (Ala. 2005). The only element at issue in this motion is whether there is sufficient evidence to establish that Mr. Gnewuch was incompetent such that Prime was negligent in entrusting him with the tractor trailer.

A plaintiff alleging "negligent entrustment may show that the driver to whom the defendant entrusted the vehicle was unable or unlikely to have operated the motor vehicle with reasonable safety due to one of several characteristics or conditions, including general incompetence or habitual negligence." *Edwards*, 926 So. 2d at 321-22 (internal quotation marks omitted). Specifically, "proof may be established by evidence of previous acts of negligent or reckless driving, previous accidents, or previous acts of driving while intoxicated." *Id.* at 322 (internal emphasis and marks omitted). However, the Alabama Supreme Court has held that, "In a case dealing with

18

the alleged negligent entrustment of an automobile, in which the issue was whether

the entrusted driver was incompetent . . . [n]egligence is not synonymous with

incompetency. The most competent [driver] may be negligent." *Pritchett v. ICN*

*Medical Alliance, Inc*., 938 So. 2d 933, 941 (Ala. 2006) (internal citations omitted).

Further, the Restatement (Second) of Torts § 390 cmt. b (1965) states, in pertinent

part:

> [O]ne who supplies a chattel for the use of another who knows its exact
> character and condition is not entitled to assume that the other will use
> it safely if the supplier knows or has reason to know that such other is
> likely to use it dangerously, as where the other belongs to a class which
> is notoriously incompetent to use the chattel safely, *or lacks the training
> and experience necessary for such use*, or the supplier knows that the
> other has on other occasions so acted that the supplier should realize that
> the chattel is likely to be dangerously used, or that the other, though
> otherwise capable of using the chattel safely, has a propensity or fixed
> purpose to misuse it.

(Emphasis added). Mr. Lanham's negligence claim against Mr. Gnewuch, standing

alone, does not establish incompetence. Rather, Mr. Lanham argues that Mr. Gnewuch

was incompetent in two ways: first, because he lacked necessary training and second,

because of two preventable accidents that occurred while Mr. Gnewuch was driving

a Prime truck.[8]

   Mr. Lanham asserts that Mr. Gnewuch was incompetent because he did not

---

   [8] Mr. Lanham also points to Mr. Gnewuch's prior conviction for assault as evidence of his
incompetence. However, he fails to explain why such conviction is relevant to Mr. Gnewuch's
competence to drive a truck.

receive any training on the specific delivery procedures applicable to each individual Wal-Mart retail location. He further alleges that he was incompetent because he did not have any prior experience driving solo and did not receive any actual road training on driving solo before being sent out as a solo driver. Mr. Lanham relies on language from comment b from the Restatement (Second) of Torts § 390 that says "one who supplies a chattel for the use of another . . . is not entitled to assume the other will use it safely if the supplier knows . . . the other is likely to use it dangerously . . . or lacks the training and experience necessary for such use" to support his contention that the alleged lack of training rendered Mr. Gnewuch incompetent. (Doc. 40 at 26). In this case, Mr. Gnewuch had the training and experience necessary to operate the tractor trailer: he had completed a three week driving course, had two years of experience prior to joining Prime, and had completed Prime's orientation classes. Plaintiff has not cited, nor could the undersigned locate, any case that even implies that the lack of specific training of the nature Mr. Lanham complains about could render Mr. Gnewuch incompetent. Further, as discussed in the previous section, even if this lack of training did render him incompetent, there is no evidence to suggest that the training would have prevented the alleged negligence that caused the accident in this case. As such, Plaintiff has failed to show that Mr. Gnewuch's lack of training on store-specific delivery procedures and lack of behind-the-wheel solo driving

instruction rendered him incompetent.

Mr. Lanham also argues that Mr. Gnewuch was incompetent as evidenced by the two preventable accidents he had while driving for Prime in January 2013. Whether these two accident are sufficient to demonstrate incompetence for purposes of summary judgment is a closer call. Prime relies on *Pryor v. Brown & Root USA, Inc.*, 674 So. 2d 45 (Ala. 1995) for the proposition that the fact these two preventable accidents occurred does not establish that Mr. Gnewuch was incompetent. In *Pryor*, the Alabama Supreme Court found that the driver's record, which consisted of two speeding tickets and a DUI conviction in the ten years preceding the accident, was insufficient to establish that the driver was incompetent such that the vehicle should not have been entrusted to him. On the other hand, in *Edwards v. Valentine*, 926 So. 2d 315, 320 (Ala. 2005), the Alabama Supreme Court upheld the fact-finder's determination that the driver was incompetent. In *Edwards*, the evidence showed that the driver had been involved in three instances of driving under the influence, was known to drink a lot, did not have a valid driver's license, and had had a previous accident while driving a vehicle owned by the defendant. *Id.* The Alabama Supreme Court noted that "[o]ne prior accident, standing alone, is not substantial evidence of incompetence," but found that, when taken in consideration of everything else, there was sufficient evidence to support a finding of incompetence. *Id.* at 324.

21

Here, the two preventable accidents, which only involved property damage, are not sufficient to establish that Mr. Gnewuch was incompetent such that it was unreasonable for Prime to entrust him with the vehicle. *Pryor v. Brown & Root USA, Inc.*, 674 So. 2d 45 (Ala. 1995); *Thedford v. Payne*, 813 So. 2d 905, 912 (Ala. Civ. App. 2001) ("Tommy had been involved in only one accident before the accident at issue in this case; that accident involved only damage to property. We cannot say that, as a matter of law, Tommy's driving record was such as to indicate an unreasonable risk of physical harm to himself and others.") (internal quotation marks omitted). Because Mr. Lanham failed to establish incompetence, Prime's motion for summary judgment as to the negligent entrustment claim is due to be granted.

### D.   Ms. Lanham's Claim for Loss of Consortium

The final claim alleges that, as a result of Defendants' actions, Ms. Lanham lost the services, companionship, and consortium of her husband, Brian Lanham. (Doc. 1 at ¶ 17). She further alleges that she lost wages from her employment in her effort to assist her husband in his time of need. (*Id.*) Under Alabama law, a loss of consortium claim is derivative of the claims of the injured spouse. *See Ex parte N.P.*, 676 So. 2d 928, 930 (Ala. 1996); *Mattison v. Kirk*, 497 So. 2d 120, 123 (Ala. 1986), overruled on other grounds, *King v. Nat'l Spa and Pool Inst., Inc.*, 607 So. 2d 1241 (Ala. 1992). To establish a claim for loss of consortium, Ms. Lanham must prove that her husband's

injury was caused by Defendants' wrongful acts and that there was "damage to [] her marital interest resulting from the underlying wrongful act." *Ex parte N.P.*, 676 So. 2d at 930.

Defendants argue Ms. Lanham's claim is due to be dismissed because Mr. Lanham's claims against Mr. Gnewuch and Prime fail as a matter of law. (Doc. 32 at 28-29). As discussed above, the court finds that Mr. Lanham has established, for purposes of summary judgment, that his injuries were caused by Defendants' wrongful acts. Accordingly, Defendants' motion for summary judgment as to Ms. Lanham's loss of consortium claim is due to be denied.

## V.   CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 32) is **GRANTED IN PART AND DENIED IN PART**. Mr. Lanham's claims against Prime for negligent and/or wanton training, supervision, hiring, and retention and negligent entrustment (Count Three) are hereby **DISMISSED WITH PREJUDICE**. Count Five is **DISMISSED** for failure to state a claim.The remaining negligence, wantonness, and loss of consortium claims by the Lanhams against Mr. Gnewuch and Prime (Counts One, Two, and Four) remain pending. The court will set this case for a final pretrial conference by a separate order.

**DONE** and **ORDERED** this the 30th day of June, 2015.

**VIRGINIA EMERSON HOPKINS**
United States District Judge